### WARREN BROS. CO. v. WRIGHT.

(Circuit Court of Appeals, Fourth Circuit. November 23, 1916.)

#### No. 1432.

TRIAL ⬦⟶223—MODE OF CHARGING JURY—DISCRETION OF COURT.

A statement by a trial judge that he desired to give only written instructions in a case, and requesting counsel to prepare and present requests, to which they assented, did not preclude him from giving an additional oral instruction to present an issue on which he had refused an instruction requested.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 514–516; Dec. Dig. ⬦⟶223.]

In Error to the District Court of the United States for the Southern District of West Virginia, at Charleston; Benjamin F. Keller, Judge.

Action at law by J. M. Wright against the Warren Bros. Company. Judgment for plaintiff, and defendant brings error. Affirmed.

J. M. Head, of Boston, Mass. (Chilton, MacCorkle & Chilton, of Charleston, W. Va., and Arthur Drinkwater, of Boston, Mass., on the brief), for plaintiff in error.

Buckner Clay, of Charleston, W. Va., and J. B. Cessna, of Erie, Pa. (Price, Smith, Spilman & Clay, of Charleston, W. Va., on the brief), for defendant in error.

Before KNAPP and WOODS, Circuit Judges, and JOHNSON, District Judge.

JOHNSON, District Judge. In the District Court John M. Wright was plaintiff and Warren Bros. Company was defendant. The litigation grows out of an alleged contract between plaintiff and defendant and plaintiff's services thereunder. The contract was never reduced to writing, but on April 24, 1903, the defendant wrote plaintiff in effect:

⬦⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

"The understanding in regard to the agreement in force with you is: You are to have general management of the Michigan business of the company under general direction of the president of Warren Bros. Company and under conditions consistent with its general policy to be more fully set forth in a contract to be drawn and executed by both parties. For one year, from May 1, 1903, you are to receive a salary of $500 per month. You are to receive annually $4,000 of the common stock of Warren Bros. Company for a period of five (5) years. You are to devote your entire time to the affairs of the business, provided that the company after the first year increase your income directly or indirectly by dividends on said stock, by bonus, or by salary by not less than $1,000 a year. You are to continue in the company's service for ten years at the company's option, and in case of dismissal for any cause, you are to receive the balance of the common stock due according to the agreement before dismissal is effected. The company agrees to purchase the common stock from you at the expiration of ten years at par, if not previously disposed of by you. You are to give Warren Bros. Company a chance to purchase at one (1) per cent. over any bona fide offer you may have. In case Warren Bros. Company, after paying dividends on first and second preferred stock and interest on bonds, fail to pay or show on the present capital actually issued April 24, 1902, net profits exceeding three (3) per cent. per annum, then you are to continue in our employ at $6,000 per annum until such time as the common stock shall earn three (3) per cent. You undertake to operate the promotion part of the business at an expense not to exceed twenty (20) cents per square yard of pavement laid, you not to assume expense exceeding twenty cents in any one city without consent of the president. It is provided that no pavement shall be bid at less than $2 per square yard without the consent of the president of Warren Bros. Company and that no work shall be taken that shall not show certain profits. If we desire to dispense with your services at any time after May 1, 1904, we agree to give you three months' notice or in lieu thereof to pay you three months' salary."

As stated, the formal contract was never executed, though the board of directors of Warren Bros. Company authorized the president to enter into a contract with Wright along the lines of the correspondence. There was evidence that the defendant treated the letter as a sufficient writing of the contract and that both parties acted under it. Plaintiff, a citizen of New York, moved to Michigan and managed the defendant's Michigan business from May 1, 1903, to May 17, 1907. The latter date he was deposed as president of the Central Bitulithic Company in which capacity he had attended to the defendant's Michigan business. The defendant had the stock in the Central Bitulithic Company, which stood in the name of Wright, though it belonged to the defendant, transferred to some one else. Thereby Wright, not being a stockholder, was ineligible as a director and president of said company, and in this way was discharged. Plaintiff during the entire time of his service received from the Central Bitulitic Company $500 per month. At the end of the first year he received $4,000 of the common stock of Warren Bros. Company from that company. This action in assumpsit sought the recovery of the value of the remaining $16,000 of common stock of Warren Bros. Company, the increase in salary after the first year, and the salary for so much of the ten years as plaintiff was not permitted to serve. Defendant stubbornly resisted plaintiff's demands. His defenses may be briefly summarized as follows:

(1) The alleged agreement of April 24, 1903, was a nullity, because not signed by two officers of Warren Bros. Company, as provided by its by-laws.

(2) That the plaintiff violated the terms of the said agreement by becoming president of the Central Bitulithic Company, a West Virginia corporation, from April, 1903, to May, 1907, and was paid by said corporation for his services.

(3) That plaintiff in carrying on defendant's business violated his contract by exceeding the promotion expense of 20 cents a square yard without the consent of its president, and in that way paid out and expended more than $54,000 of the defendant's money.

(4) The defendant alleges that it advanced to the plaintiff divers sums of money aggregating more than $26,000 to be used for its benefit in the management of its business and that plaintiff appropriated the same to his own use.

On the first trial in the District Court it was ruled that the plaintiff could not recover for the unexpired time of the ten years, and he had judgment for more than $21,000, a very much smaller sum than he had sued for. The defendant sued out a writ of error. The plaintiff took a cross-writ. The opinion of this court on the former appeal (204 Fed. 231, 122 C. C. A. 503) held that, under section 53 of chapter 53 of the Code of West Virginia (sec. 2885), the plaintiff as agent of the defendant corporation could not be employed except during the pleasure of the directors. The ruling of the District Court that he could not recover for the time that he was not permitted to serve was therefore sustained. It also followed that the plaintiff could not recover for three months' salary after his discharge without notice. He can recover for such time only as he performed services according to the terms of the contract. With the former opinion of this court as a guide, the second trial in the District Court should have been confined to the determination of three or four important questions upon which the case depends. These questions may be briefly summarized as follows:

(1) Was there a contract?

(2) Did it contemplate that plaintiff's services in behalf of the defendant corporation should be conducted and carried on in the name of the Central Bitulithic Company, a subsidiary?

(3) Did the plaintiff perform the services according to the contract honestly and faithfully?

(4) If there were any variations from the terms of the contract, did the defendant order such variations or consent thereto?

This court also indicated that the defendant might take advantage of two positions it had contended for on the appeal. Those propositions were:

(1) That it was unlawful for the plaintiff to be paid anything in his capacity as a director as such of the defendant company. The burden was on the defendant to show that the plaintiff was paid or promised anything as an officer or director as such.

(2) That there were minority stockholders of the Central Bitulithic Company who did not consent to the plaintiff's employment by the defendant, the burden being on the defendant to show the extent and character of such minority holdings.

Defendant did not offer any evidence on the second trial to establish either of the above propositions, and they go out of the case.

The main questions upon which this case hinged were submitted to the jury under instructions that were clear, relevant, and fair. Defendant complains because of the manner in which one of the instructions was given to the jury by the court. The record shows that when the evidence was all in the court said:

The Court: The next thing will be the preparation of instructions. Have you any instructions, gentlemen?

Mr. Head: I have not.

The Court: I have no disposition to hurry you in the matter. I would like that matter, in so far as you deem the questions of law are involved, to be as fully treated as you can. I am not well, and have not been for the last two days, and I do not desire, if I can avoid it, to do anything in the way of a charge to the jury. I prefer to give them such proper written instructions, which, by the way, is the ordinary practice in this state.

Mr. Chilton: That will be satisfactory.

The Court: I will be glad if you will exchange your views and serve a copy on each side.

Mr. Chilton: How would it do, your honor, for us to prepare, say in the afternoon sometime, we would give a copy to counsel upon the other side, so that you might have an opportunity to glance over them before the court convenes in the morning?

The Court: That will be satisfactory, and I will let the jury go until morning.

Mr. Cessla: Quite satisfactory to us.

The following day the court instructed the jury in accordance with the written requests of the parties to the action. Some of the instructions were refused. The case was argued, and after the argument of counsel to the jury the court said:

"Gentlemen of the jury, I had intended to say nothing more to the jury at all, but it may be that I ought to on one point. I think it should be called to the attention of the jury as an issue, as a possible issue in this case. An instruction was offered on the point by counsel for the defendant, but it was asked in such a form that I felt compelled to reject it; but I will take the responsibility upon my own motion of just calling the attention of the jury to that question. Gentlemen of the jury, in addition to the instructions that have been given in writing, I desire to offer you a short instruction, and that is that a contract of employment involves as one of its features of obligation on the part of the person employed to exercise with his ability good faith and honesty. The defendant here introduces certain checks for amounts aggregating something over $10,000, and for which no vouchers have been filed in the office of the Central Bitulithic Paving Company. The plaintiff made a verbal explanation in regard to the matter, and asserted that his method of disbursement of those funds without taking vouchers therefor was in accordance with the understanding and agreement of the president of the Warren Bros. Company, and that these were disbursed in the entire interest of the business managed by him. The only way in which this matter is important is as it touches the honesty and good faith of the plaintiff. If you believe that this money was honestly expended in the interest of the business under the management of Mr. Wright, it cannot affect this suit; but, if, on the other hand, you believe that in respect to this matter he did not exercise honesty and integrity, he would not be entitled to recover."

This instruction was entirely proper. It is not true that the remarks of the court amounted to a stipulation that the court would not give the jury any instructions except such as were reduced to writing. The

object of a trial is to help to ascertain the truth and to do justice, and the manner of conducting the trial must be left largely in the sound discretion of the trial judge. This was one of the defendant's material defenses. It had requested instructions upon this point, but in a form in which the judge could not grant them, so in the interest of truth and a fair trial the court of its own motion gave the instruction above set out. The defendant certainly had no room to complain of that instruction. There was no error of law, and there was no abuse of the sound discretion of the court. An examination of the whole record shows that all the issues were fairly, clearly, and fully submitted to the jury. In the light of the evidence, the verdict was exceedingly favorable to the defendant.

The judgment below should be affirmed.

⟐For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes