# CHARLESTON.

STATE *ex rel* ALEXANDER BLACKWOOD *v.* E. A. ·BRAST *et al.*

(No. 5253.)

Submitted November 11, 1924.　Decided March 31. 1925.

1.　MANDAMUS—*Mandamus Will Not Issue to Restore One to Office in Corporation, Except on Showing of Clear Legal Right.*

Mandamus will not issue to restore one to office in a corporation unless he shows a clear legal right thereto.　(p. 600).

(Mandamus, 26 Cyc. p. 355.)

2.　CORPORATIONS—*Director, Present and Participating in Meeting, is Estopped to Deny Its Legality.*

A director in a corporation, who is present and participates in a director's meeting, is estopped to deny the legality of such meeting.　(p. 601).

(Corporations, 14A C. J. § 1844 [1926 Anno ]

3.  SAME—*Limitations of Judicial Inquiry Into Removal of Corporation Officer by Corporate Body Stated.*

    · Corporate bodies, in proceedings taken for the removal of an officer, are not bound to act with strict regularity which obtains in judicial proceedings, and the courts as a rule will limit themselves to inquiring whether they have acted within their powers, after giving notice to the accused and affording him opportunity to make his defense, and whether they have exercised their powers fairly and in good faith.  (p. 602.)

    (Corporations, 14A C. J. § 1837.)

4.  SAME—*Person, Employed as General Manager for Certain Term, Held to Hold Place Only During Pleasure of Board of Directors.*

    A person employed by a corporation under a by-law providing for the appointment and employment of a general manager, "whose duty it shall be to look after and superintend the manufacturing operations of the company and subject to such restrictions and limitations as the board may impose, to employ all assistants and labor necessary therefor; contract for compensation, and to discharge any person so employed, and perform such other duties as may be required of him by the board", is the agent of such corporation, within the meaning of section fifty-three, chapter fifty-three, Code, and holds his place only during the pleasure of the board of directors, although such agent is employed for a certain term.  (p. 603).

    (Corporations, 14 C. J., § 1835.)
    (NOTE:—Parenthetical references by Editors.  C. J.—Cyc.  Not part of syllabi.)

Mandamus by the State, on relation of Alexander Blackwood, against E. A. Brast and others.

*Writ denied.*

*Wm. Beard* and *T. A. Brown,* for relator.
*Smith D. Turner* and *Marshall & Forrer,* for respondents.  ·

WOODS, JUDGE:

Alexander Blackwood seeks a peremptory writ of mandamus to compel the directors of the Blackwood Electric Steel Corporation to restore him to the office of president, to which he had been elected by the directors, and second, to the position of general manager, to which he had been elected, or appointed,

by said directors, from which positions he alleges he has been illegally ousted by the said directors of said corporation.

The relator came to Parkersburg, in 1922, from Sandusky, Ohio. He claimed to be skilled in the latest and best method of welding steel. The Board of Commerce, being interested in bringing industries to the city, lent a willing ear to a project of Blackwood, to build and equip a factory for the manufacture of steel castings and alloy steel by the electric furnace process, in which method Blackwood laid claim to be an expert. The capital stock was to be $150,000.00, or fifteen hundred shares, at $100.00 each. B. D. Thomas, of Pennsylvania, entered into the plan of promoting this corporation, along with the relator, each subscribing for three hundred and fifty shares of the stock. An option on five hundred shares was taken by Blackwood, one C. H. Kibby subscribed for one hundred and fifty shares, and the Board of Commerce agreed to secure subscriptions for the remaining one hundred and fifty shares, and also to lend its aid in procuring from the city banks a loan, on an issue of $50,000.00 of bonds of the corporation as security, when the $100,000.00 subscribed to the stock had been put into the buildings and machinery of the plant. As a result of these negotiations, a certificate of incorporation under the laws of this state was issued to the Blackwood Electric Steel Corporation, on the 4th day of December, 1922. The first meeting of the stockholders was held on the following day. By-laws were adopted, and the written contract between Blackwood and Thomas and the Board of Commerce, dated October 23, 1922, was ratified. This contract contained the provisions of the agreement of the parties already set out, as well as provided for the location, and erection of a suitable factory building, to cost approximately $51,000.00, and to install machinery and equipment with a two-ton electric melt furnace at the approximate cost of $69,670.00; that none of the stock of said company should be issued as promotion stock, and that the same was to be sold at par and the proceeds applied to the expenses of organization, the purchase of the site, and the erection and equipment of said factory. C. T. Hiteshew, Thomas Logan, O. S. Hawkins, B. D. Thomas, C.

H. Kibby, H. S. Newton and relator, Blackwood, were elected directors. These directors met and selected Blackwood, president; B. D. Thomas, vice-president; and C. H. Kibby, secretary and treasurer. The directors, under authorization of section five, article four of the by-laws, proceeded to select a general manager. This section reads as follows:

"The Board of Directors may appoint and employ a general manager of the Company, whose duty it shall be to look after and superintend the manufacturing operations of the Company, and, subject to such restrictions and limitations as the Board may impose, to employ all assistants and labor necessary therefor, contract for compensation and to discharge any person so employed, and perform such other duties as may be required of him by the Board. And shall make such reports regarding the business of the corporation as may be required by the Board of D'rectors and receive such compensation as shall be determined by them."

It having been contemplated and provided for in the agreement between Blackwood and Thomas and the Board of Commerce that Blackwood should be general manager, he was requested to submit a written contract embodying the terms and conditions on which he should be appointed and employed as said general manager. This was done. Upon an examination of said agreement, Blackwood was appointed and employed, on the terms therein set out, as general manager for the corporation, for an annual compensation of $8,400.00, to be paid monthly on the first day of each month, beginning with the first day of January, 1923. This contract among other things provided that, "The said Alexander Blackwood shall hold said office for the term of five years from December 1, 1922, *unless sooner terminated.*"

From the minutes of the corporation it appears that Blackwood proceeded with the making of contracts for the construction and equipment of the plant, without having the money and before Thomas had made good his subscription. Thomas announced his inability to pay his subscription and resigned as vice-president and sales manager. He was there-

upon made sales agent at Pittsburgh by the relator. It seems
that no attempt was made to hold him to his subscription.
His stock was sold, one hundred and fifty shares to B. W.
Miller and one hundred shares to H. F. Pfost. Miller, it
seems, was given a similar contract, to that of Blackwood's,
as ''production manager'' at a salary of $3,600.00 a year. A
special stockholders' meeting was held on May 24, 1923, at
which meeting the Board of Directors were authorized to bor-
row the sum of $50,000.00 for a period of not exceeding five
years, for the purpose of paying the indebtedness of the cor-
poration incurred in acquiring, constructing and equipping the
plant. The factory commenced operation in July, 1923. At
the regular annual meeting of the stockholders in January,
1924, the following directors were unanimously elected:
Alexander Blackwood, C. H. Kibby, B. W. Miller, H. F. Pfost,
H. S. Newton, E. A. Brast and John Marshall. These direc-
tors selected Blackwood, president; E. A. Brast, vice-presi-
dent; B. W. Miller, treasurer; and C. H. Kibby, secretary. At
a meeting of the directors on the 5th day of March, there was
a general discussion of the various problems and conditions
of the corporation. It was ordered that ''a report should be
submitted showing conditions of the business at the close of
February, 1924, and that all contracts with employees of the
company be submitted to the board for their information.''
At another meeting on March 10th, the president submitted
a financial report of the corporation. On motion a commit-
tee was appointed of two members and the president, to work
out a plan of re-organization in which the heads of the differ-
ent departments, such as treasurer and sales manager, would
be vested with absolute responsibility for the proper function
of their departments, and that they in turn be held account-
able. The president appointed Miller and Kibby to serve with
him on this committee. This committee was to report to a
meeting of the directors to be held on March 19th. This
meeting was not held. All the associates with Blackwood in
the directorship unite in asserting that Blackwood would not
co-operate with them in formulating the proposed plan of re-
organization. They assert that the corporation had been.

losing business and was operating at a loss, due to Blackwood.'s mismanagement. Some of the most influential customers withdrew their business. The other members of the committee, anxious to perform the duties assigned to them under the said resolution, were forced to consult counsel as to what should be done to relieve the situation, and save the corporation. As to what happened from this time forward, there is a sharp conflict between the version of Blackwood and that of the other six directors. Blackwood stands alone on every controversial fact. At a stated meeting of the directors on April 2nd, directors Miller and Kibby went to the office of the company, at the hour of meeting, and it was suggested that it would be more convenient for the directors to have their meeting at four o'clock that afternoon. To this Blackwood, according to the testimony of Miller and Kibby, agreed. At the time agreed upon, a meeting was held, at which all of the directors attended, except Pfost. The relator presided as chairman of the meeting, put all questions, and declared the results. The two members of the committee on the re-organization plan, Kibby and Miller, made their report, which was adopted by the votes of all directors present, except Blackwood. On motion of Miller, seconded by Newton, Blackwood was removed as general manager of the corporation. On this motion all voted aye, except Blackwood, who voted no. The following resolution was adopted by affirmative vote of all present, except Blackwood, who refrained from voting:

"Whereas, B. W. Miller, C. H. Kibby and H. S. Newton have preferred charges against Alexander Blackwood as President of this corporation and have asked time in which to reduce said charges to writing, and also asked that the time be fixed for the hearing of said charges,

Be it resolved that the said B. W. Miller, C. H. Kibby and H. S. Newton do within ten (10) days from this date file with the Secretary of this corporation specifications in writing of the charges so preferred; that the Secretary do forthwith cause a copy of said charges to be served upon said Alexander Blackwood, together with a copy of this resolution, and,

that the hearing of said charges be, and is hereby directed to be had at a regular meeting of this Board to be held on the 12th day of April, 1924.

Resolved further, that the said Alexander Blackwood be not permitted to exercise any of the powers of the president of this corporation until the said charges have been heard and determined.

Resolved further, that pending the hearing of said charges the Vice-President of this corporation shall have all the powers and perform the duties of President of this corporation from this time until said charges have been heard and determined.''

The relator challenges the validity of this meeting. He cites section three, article three of the by-laws, which provides, "stated meetings of the Board may be held at such time and place as shall be determined from time to time by resolution of the Board." He claims that under this authority the board of directors adopted a resolution at a regular meeting, held on September 11, 1923, providing for "a director's meeting every Wednesday, at 11 a. m. until such time as agreed otherwise." This resolution was in effect, he contends, on the 2nd day of April, 1924. It is admitted that this was the day for their regular weekly meeting. The only ground alleged for its invalidity is that it was held at four o'clock instead of eleven o'clock. We have seen that Blackwood agreed to the change. He attended at the later hour—four o'clock— and participated in the meeting without making any objection to the hour. The agreement to meet at the later hour was in effect an adjournment to that time. *State ex rel Hartnett* v. *Powell*, 101 Iowa, 382. The relator also raises the question of the good faith of the directors who suggested the later hour to him, and contends if he (Blackwood) did give his consent to the deferred meeting, such assent was procured by trick or fraud in pursuance of a combination and conspiracy formed by the associate directors to remove the relator from office, and that such presence so obtained would be ineffectual to constitute a legal meeting of the Board. He cites *Trendley* v. *Illinois Traction Co.*, 241 Mo. 73, to sustain this

contention. In that case it held that, if a director was trapped
into attendance at such meeting he would not be bound if he
left the meeting to prevent a quorum as soon as he realized
that a meeting was to be held and corporate action detrimental
to his interests taken. How different a state of facts obtains
here? Blackwood not only attended, but remained and par-
ticipated in the proceedings during the entire meeting. In-
stead of the doctrine announced in the Trendley case sup-
porting the contention of the relator, it is forceful authority in
support of the validity of the meeting. However, the Court
finds no evidence, outside of the declaration of the relator,
warranting any inference of any fraud practiced on the said
relator by the other directors. The record discloses the fact
that many of the stated meetings of the directors were held
at hours, other than the one prescribed, to suit the conven-
ience of the directors. 4 Cook on Corporations (8th ed.)
2942, states the rule ''that the law is inclined to tolerate more
freedom in the notice of calling and holding directors' meet-
ings, in as much as the meetings are more frequent; the ab-
sences more common; the acts less fundamental and ratifica-
tion by acting on contracts more certain and easy.'' At this
same meeting a check was authorized for the salary of Black-
wood as general manager for the last part of March and all of
the month of April. This was accepted by the relator. By
this act he recognized the validity of the meeting. A stock-
holder in a corporation, who is present and participates in a
meeting of the stockholders thereof, is estopped to deny the
legality of such meeting. *Germer* v. *Gas & Oil Co.*, 60 W. Va.
143. We believe the contention as to the irregularity of this
meeting to be without merit.

The next objection of the relator goes to the validity of the
meeting of the directors on April 12th, and the action there
taken removing Blackwood from the office of president. The
sufficiency of the notice to Blackwood of the charges against
him is attacked. The resolution adopted at the meeting on
April 2nd, directed ''that the hearing of said charges (against
Blackwood) be, and is hereby directed to be at a regular
meeting of this board to be held on the 12th day of April,

1924." As we have seen, Blackwood was present at this meeting. He was served with a copy of the charges. He was given notice of the hour and place at which the meeting was to be held. He took a copy of the charges and consulted his attorney in regard to them. He wrote out an answer in his own hand, and after having it typewritten, affixed his signature thereto. This answer was taken by Mr. Wolfe, who was then acting as his attorney, to the place of meeting, on the day set for the hearing, and left with the office stenographer, to be filed at the meeting. The directors were notified by Mr. Wolfe that Blackwood would not make further contest. It is true Blackwood claims that he went to the office in the Union Trust Building, where the meeting was to be held at the hour named in the notice, and that he remained there until after eleven o'clock and that no meeting was held, nor did he see any directors there. He produced no evidence to support this statement, aside from his own testimony. No attaches of the office saw him. On the contrary all six of the directors who were present testify that the meeting was held as recorded in the minutes, at eleven o'clock, A. M. At the meeting the following resolution was unanimously adopted:

> "Whereas, the Board of Directors have had read and considered the charges of B. W. Miller, C. H. Kibby and H. S. Newton against Alexander Blackwood, and the reply to same by the said Alexander Blackwood, and
>
> "Whereas, the said Alexander Blackwood has absented himself from this meeting and given the Board no opportunity to examine into the points made controversial, and
>
> "Whereas, there is, in the judgment of the Board, sufficient undisputed facts disclosed to warrant removal of said Alexander Blackwood as President of this Company, and
>
> "Whereas, said Alexander Blackwood has advised the officers of this Company, through his attorney, of his willingness to retire from the Company upon the disposal of his stock;
>
> "Resolved: That the finding of this Board is that said charges are sustained, and that the office of President is hereby declared vacant by the removal of the said Alexander Blackwood."

Each of the directors went upon the stand and testified to
the truth of the facts as they appear on the record of the meet-
ing.  It is well settled that corporate bodies, in the proceed-
ings taken for the removal of a director or an officer in a
corporation are not bound to act with strict regularity which
obtains in judicial proceedings, but that the courts will limit
themselves to inquiring whether they have acted within their
powers, after giving notice to the accused and affording him
opportunity of making his defense, and whether they have
exercised their powers fairly and in good faith.  All ques-
tions beyond this are questions of which the courts have no
cognizance.  *Albers* v. *Merchants Exchange*, 39 Mo. 588.  In
a corporation the fate of all interested is in the same boat.
The prerogatives and functions of the directors of a private
business corporation are well defined and established.  Their
actions must be based upon what would be for the best inter-
ests and welfare of the corporation.  Their relation to the
stockholders is essentially that of trustee and cestui que trust.
They are bound by all of those rules of conscientious fairness
and honesty in purpose which the law imposes as the guides
for those who are under the fiduciary obligations and re-
sponsibilities.  They are held, in official action, to the extreme
measure of candor, unselfishness and good faith.  These
principles are rigid, essential and salutary.  The presumption
is that their actions have been taken in good faith and for
the good of the corporation.  It is undoubted that, where the
title is undisputed or clear, mandamus will lie to deliver or
restore an office in a corporation to a person entitled thereto.
*Cross* v. *Railroad Company*, 35 W. Va. 174.  But a writ of
mandamus issues only in case of necessity to prevent injustice
or great injury.  If there is any doubt of its necessity or
propriety it will not go.  26 Cyc. 146.  The application must
be in good faith, not to serve an ulterior purpose; the relator's
hands must be clean; he must not have contributed to the con-
dition complained of.  26 Cyc. 150.  The burden is on the
relator to substantially prove every claim to all the redress
which he seeks in his writ.  If he fails to establish any sub-
stantial part of his claim his application will be denied.  The
allegations of the relator that he was removed from the office

of president by reason of a fraudulent conspiracy existing among the other directors fall for lack of proof. It is a significant fact that out of this corporation, there does not appear one person, to uphold the relator in his contention. He did not seek restoration to the office until many months after he was deposed. The authorities are to the effect that where an officer abandons his office voluntarily, or where his demand for the writ has become stale, no restoration can be secured by the writ. *Eastman* v. *Householder*, 54 Kan. 63.

The last ground that the relator relies on for the issuance of the writ is to restore him to the position of general manager from which he alleges he has been illegally removed. Section fifty-three, chapter fifty-three of the Code, gives to a board of directors the authority to employ officers and agents during the pleasure of the board. The question then of relator's removal as general manager turns on his relation to the defendant corporation, as such general manager. Whether he was an officer or agent of the corporation, within the meaning of the statute, or whether he was a mere servant or employee. That question must be determined by the character of the services the relator was to perform. Mechem on Agency, section two, says: "Agency properly relates to transactions of business with third persons, and implies more or less discretion in the agent as to the time and manner of his performance. Service, on the other hand, has reference to actions upon or about things. It deals chiefly with matters of mere manual or mechanical execution, in which the servant acts under the direction and the control of the master." This rule was approved by this Court in *Munn* v. *Trust Company*, 66 W .Va. 205. The by-laws, section five, article four, creating the office of general· manager, provides: "The board of directors may appoint and employ a general manager of the company, whose duty it shall be to look after and superintend the manufacturing operations of the company and, subject to such restrictions and limitations as the board may impose, to employ all assistants and labor necessary therefor, contract for compensation and to discharge any person so employed, and perform such other duties as may be required of him by the board." We are of opinion that the

duties here defined made him, as such general manager, an officer or agent of the corporation having a representative capacity, and not a mere servant. *Long* v. *Savings Co.*, 76 W. Va. 31. Hence, within the meaning of the statute, he was an officer or agent of the corporation. It necessarily follows that his employment was only during the pleasure of the board, even if the said contract could be construed to be a contract for relator's employment as general manager for a term of five years. *Darrah* v. *Wheeling*, 50 W. Va. 417; *Wright* v. *Warren*, 204 Fed. 231; *Munn* v. *Trust Co., supra.* As general manager he was subject to removal by the board of directors, without cause, at any moment. To hold otherwise would nullify the statute.

*Writ denied.*